**Alexandria**

DENCY MICHAEL WELBORN and
ANNE LOUISE WELBORN

v.

JOHN DOE and
COMMONWEALTH OF VIRGINIA

No. 0607-89-4

Decided July 31, 1990

[redacted]

Counsel

William Reichhardt (Michele H. Rydell; Reichhardt & Rydell, P.C., on brief), for appellants.

No brief or argument for appellees.

Opinion

**MOON, J.**— The sole issue is whether a man by proceeding in accordance with Code § 63.1-221 may adopt a child born to his wife by artificial insemination with a third party donor's sperm. We conclude that he may.

Dency Michael Welborn and Anne Louise Welborn signed a consent agreement requesting that Mrs. Welborn be inseminated with the sperm of an anonymous third party donor. Conception occurred and fraternal twins were born. Mr. Welborn was listed as the father on the children's birth certificates. The identity and location of the sperm donor, John Doe, is not reasonably ascertainable. The Welborns complied with all of the provisions of Code § 64.1-7.1.

The Welborns filed an adoption petition whereon Mrs. Welborn consented to adoption of the minor children by her husband, in accordance with Code § 63.1-221. The Welborns asked that, pursuant to Code § 63.1-231(c)(ii), the adoption proceed without reference to the local superintendent of public welfare or to the Commissioner of Social Services for an investigation and report, and that no interlocutory order be required.

The trial court referred the case to the Department of Social Services for a written evaluation and recommendation. The Commissioner of Social Services recommended that the petition be denied because the husband and wife were already listed as the legal parents on the children's birth certificates. No hearing was held, and the court entered a final order dismissing the adoption petition, holding that adoption was inappropriate and unnecessary.

In determining this issue, we consider whether the rights of the Welborns to the children and the rights of the children to the Welborns would be made any more secure through an adoption proceeding than they are merely by compliance with Code § 64.1-7.1. We conclude that Code § 64.1-7.1 merely establishes a presumption of legitimacy in the context of artificial insemination; compliance with the adoption statute terminates the rights of the natural parent(s).

> The natural parents . . . shall, by such final order of adoption, be divested of all legal rights and obligations with respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them. . . . . Any child adopted under the provisions of this chapter shall . . . be, to all intents and purposes, the child of the person or persons so adopting him, and . . . shall be entitled to all the rights and privileges, and subject to all the obligations, of a child of such person or persons born in lawful

wedlock.

Code § 63.1-233.

■ Code § 32.1-257(D) provides in part that "[a] child born of a married woman, who conceived the child by means of artificial insemination with consent of her husband, shall be deemed legitimate and the birth certificate of such child shall contain full information concerning the mother's husband as the father of the child." Code § 64.1-7.1 addresses the issue of artificial insemination for inheritance purposes. It provides that:

> Any child born to a married woman, which was conceived by means of artificial insemination performed by a licensed physician at the request of and with the consent in writing of such woman and her husband, shall be presumed, for all purposes, the legitimate natural child of such woman and such husband and the same as a natural child not conceived by means of artificial insemination.

■ Code § 32.1-257(D) speaks to the birth certificate and, although it states the child "shall be deemed legitimate," it does not terminate the rights of a sperm donor. Code § 64.1-7.1, referred to but not relied upon by the trial court, merely establishes a presumption that the husband is the natural father for purposes of inheritances. A presumption may be rebutted when facts to the contrary are established. Thus, Code §§ 32.1-257(D) and 64.1-7.1 do not establish the parent-child relationship with the legal certainty and to the same extent as adoption proceedings pursuant to Code § 63.1-231. Neither Code § 32.1-257(D) nor § 64.1-7.1 speaks to the rights of the sperm donor, the natural father. Adoption, on the other hand, not only establishes the parent-child relationship and creates rights in the adoptive father and the child, but also divests the natural father of all legal rights or obligations with respect to the child.

The concern of the Welborns is not merely speculative. A case from another jurisdiction has held that a known donor of semen used by a unmarried woman to artificially inseminate herself is entitled to visitation rights as the natural father of the child. *See C.M. v. C.C.*, 152 N.J. Super. 160, 377 A.2d 821 (1977). This problem is now resolved in the Uniform Parentage Act, not

adopted in Virginia, and in the statutes of the State of New Jersey.

The Uniform Parentage Act, 9B U.L.A. 287 (1973), provides, in Section 5(b), that "[t]he donor of semen provided to a licensed physician for use in artificial insemination of a married woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived." Thus, under the Act the rights of the sperm donor are severed just as they are in adoption.

A New Jersey statute, N.J. Stat. Ann. § 9:17-44(b) (1983), provides that "[u]nless the donor of semen and the woman have entered into a written contract to the contrary, the donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the father of a child thereby conceived and shall have no rights or duties stemming from the conception of a child."

The General Assembly of Virginia has enacted no similar legislation. Our statutes on the subject of artificial insemination are not so ambiguous that we could construe them as providing protections similar to the Uniform Parentage Act and the New Jersey statute. Until such time as the Code is amended to terminate possible parental rights of a sperm donor, only through adoption may the rights of the sperm donor be divested and only through adoption may the rights of Mr. Welborn and the twins born to his wife be as secure as their rights would be in a natural father-child relationship.

■ Therefore, because the adoption procedure terminates any rights of the natural father and establishes the parent-child relationship, we hold that the adoption procedure is available to the husband of a woman to whom a child is born by means of artificial insemination by sperm of a third party donor.

*Reversed and remanded.*

Keenan, J., and Willis, J., concurred.