COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Ortiz and Causey

CHRISTOPHER O. HILL

v.      Record No. 0062-22-3

SHANITA HILL

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 7, 2023

CHRISTOPHER O. HILL

v.      Record No. 0316-22-3

SHANITA HILL

FROM THE CIRCUIT COURT OF AMHERST COUNTY
Michael T. Garrett, Judge

(Christopher Hill, on brief), *pro se*. Appellant submitting on brief.

(Ashley E. Hedrick; Hedrick Law, on brief), for appellee. Appellee
submitting on brief.

(Heather H. Goodwin; Goodwin Law of Virginia, PLLC, on brief),
Guardian *ad litem* for the minor children. Guardian *ad litem*
submitting on brief.

In these two appeals Christopher O. Hill (father) challenges the circuit court's custody and

visitation order, as well as its denial of father's motion to remove the children's guardian *ad litem*

(GAL). Father argues that the judge in the Amherst County Juvenile and Domestic Relations

District Court (the JDR court) was biased. Father also argues that the circuit court did not consider

his concerns about the GAL's "performance while representing the children." Father further

contends that the circuit court erred by awarding Shanita Hill (mother) sole custody of the children

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and limiting his visitation to one supervised visit per month and weekly thirty-minute telephone calls. Both parties here have waived oral argument. Upon reviewing the record and briefs of the parties on appeal, we conclude that the circuit court did not err. Accordingly, we affirm the circuit court's judgment.

BACKGROUND[1]

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" *Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014)). Here, mother was the prevailing party below, so we review the evidence in the light most favorable to her.

Father and mother have three children, two of whom are minors and are the subjects of these appeals.[2] In December 2019, father separated from mother and left their home in North Carolina; father later moved to Florida. Mother sought to move with the children to Virginia, where she had family support. In March 2020, the General Court of Justice, District Court Division, in Wayne County, North Carolina awarded mother temporary legal and physical custody of the children and permitted her to move to Virginia with the children.[3]

---

[1] The record in these cases was sealed. Nevertheless, the appeals necessitate unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] The two minor children are twins and were ten years old at the time of the circuit court's final order; the parties' oldest child had reached the age of majority before the circuit court proceedings began.

[3] The North Carolina court awarded father "a minimum of one hour per month" of supervised visitation. The North Carolina court subsequently transferred jurisdiction to Virginia.

- 2 -

On May 21, 2021, mother filed petitions for custody and visitation of the children in the JDR court. The JDR court subsequently appointed the GAL. On August 10, 2021, the JDR court awarded mother sole legal and physical custody of the children and granted father supervised visitation for one hour, once per month, at the YWCA in Lynchburg.[4] The JDR court also awarded father weekly telephone contact with the children. Father appealed the JDR court's rulings.

While the case was pending in the circuit court, father moved to replace the GAL. At the hearing on father's motion, father alleged that the GAL "did not follow all of the guidelines within the Virginia standards of guardian *ad litem* to its entirety" and had not fully investigated their situation.[5] Father admitted, however, that he and the GAL had spoken on the telephone for more than one hour, and he was able to tell the GAL about the background and the history of the case. Father subsequently acknowledged that he spoke with the GAL "in the beginning once and then I called her after the [JDR court's final] hearing."

Father also had mailed information to the GAL, including e-mails, text messages, and other communications between him and mother. Father admitted that there was no further information that he intended to provide to the GAL. Part of father's complaint was that the GAL did not present evidence to the JDR court that father had given to the GAL. The circuit court explained to father that the GAL was not his attorney and that it was not the GAL's obligation to present father's evidence.

---

[4] Father had moved to Williamsburg at the time of the final JDR court hearing.

[5] The "Standards to Govern the Performance of Guardians Ad Litem for Children" can be found online at
https://www.vacourts.gov/courtadmin/aoc/cip/programs/gal/children/gal_performance_standards _children.pdf.

The GAL proffered information about her involvement in the case, including meeting with the children and visiting their home.[6] She had been unable to visit father's home because he had been living in Florida and father had only moved to Virginia the day before the JDR court hearing "or thereabouts." The GAL stated that she had reviewed the information father provided and had explained to him "on multiple occasions" that she was "not his attorney" and would not present his evidence.

In addition to challenging her performance, father argued that the GAL had a conflict of interest because she was a close associate of the JDR court judge and his wife because the GAL employed the JDR court judge's wife. Father argued that it did not matter if the JDR court judge's wife started working with the GAL after the JDR court proceeding because the GAL would likely have been interviewing or otherwise considering hiring the JDR court judge's wife by the time of the JDR court's August 10 hearing and should have disclosed that potential conflict of interest to the JDR court. In addition, father argued that the GAL was still involved in the case and therefore should have withdrawn. The GAL denied having any conflict of interest. The GAL proffered that "[t]here were absolutely no discussions with [the JDR court judge's wife] prior to the hearing of this case on August 10th concerning employment, her possibility of leaving employment." The GAL admitted that she had met the JDR court judge's wife professionally in 2016.

Father claimed that the GAL should have disclosed that she knew the JDR court judge's wife as soon as she was appointed as GAL. The circuit court questioned father about how the GAL's relationship with the JDR court judge's wife impacted the matter once father had noted his appeal to the circuit court. Father reiterated his claim that the GAL should have disqualified herself because she knew the JDR court judge's wife.

---

[6] The GAL also met with the parties' oldest child.

After hearing the evidence and arguments, the circuit court found that, notwithstanding father's "sweeping allegations," there was no basis for father's claim that the GAL was not qualified. The circuit court further found that "knowing someone doesn't create a conflict of interest." The circuit court accepted the GAL's proffers that she had not discussed employment with the judge's wife until after the JDR court hearing. The circuit court found that there was no conflict of interest. The circuit court further explained that "this is an appeal de novo as if no hearing had occurred in [d]istrict [c]ourt," and there was "no legal basis" to remove the GAL. The circuit court reminded father that it was his burden, not the GAL's duty, to present any evidence that he wanted the court to consider. The circuit court denied father's motion.

On December 3, 2021, the parties appeared before the circuit court for a trial de novo following father's appeal of the JDR court's custody and visitation award. Mother presented evidence that father had had very limited visitation with the children between December 2019 and May 2021. At father's last visitation in May 2021, mother felt uncomfortable and asked her brother to come by. When mother's brother arrived, father chased his car and told him to "get out [of] the car and fight him like a man." Father also yelled towards the children, frightening them enough that one child grabbed a baseball bat. The police were called to help diffuse the situation.

Mother suggested to father that he schedule a visit with the children at the YWCA, but father was reluctant to do so because he did "not feel comfortable or safe in Amherst County" after the previous visitation incident. Mother also testified that the weekly telephone calls between father and the children were "Not good." She had to be the one to call father, because the children did not want to do so. Mother testified that the children frequently cried and were "frustrated" after speaking with father, who told them they were "mean" and called them "bullies."

- 5 -

Mother characterized father's relationship with the children as "pretty much nonexistent." Mother claimed that father had visited with the children "four or five times" in two years, despite court orders permitting monthly visits. Mother acknowledged that father had moved from Florida to Virginia and was "physically closer" to the children, yet he still had not visited with the children since May 2021.

Mother described her relationship with the children as "Amazing." The children are home schooled and had "[s]traight As" in school. Mother took the children to all their medical appointments and in the spring of 2021, mother started taking them to see a counselor. They attended sessions every two weeks, and mother found that the sessions had been helpful for the children. On one occasion, the children spoke with father on the telephone while the counselor was present. Father claimed that the children's counselor did not know all the facts about their family history and that mother had made "false allegations" to the counselor.

Mother asked the circuit court for sole legal and physical custody of the children. She requested that father's visitation continue to be supervised and limited to one hour per month. Mother was not aware of any third parties, other than the YWCA, that could supervise the visitation.[7] She also asked the circuit court to order that the telephone calls be limited to when the children wanted to talk with father.

Meanwhile, father requested that the parties have joint custody and that he have visitation with the children every weekend at his house. Father explained that at his last visit with the children in May 2021, he did not know mother's brother was present that day; he saw another vehicle at the designated visitation area, which "set off [his] PTSD."[8] He asserted that because

_____

[7] Mother testified that the children had a "relationship" with father's grandmother, but because she was in her nineties, she was not a viable option to supervise the visits. The parties' oldest child did not want to supervise the visits.

[8] Post-traumatic stress disorder.

of that incident and to "remove any outside interference," his home was the "best place" for their visits. At the time of the circuit court hearing, father was living in a two-bedroom home in Williamsburg. He offered into evidence photographs of his home, including a picture of the children's bedroom with two beds.

Father testified that he is a disabled veteran and that he required the use of a wheelchair or a mobile scooter. Father had applied for disability, which had been denied previously, but he hoped that it ultimately would be approved. Father suffers from post-traumatic stress disorder and "tremors." In response to mother's testimony that father sometimes experienced "jolts like seizures in his body" that affected his mobility and ability to do daily activities, such as cook, clean, and drive, father assured the circuit court that he was "now able to drive" and that the "jolts" were "under control." Father had a "live-in care giver" who slept in his room which left his second bedroom available for his children. He participated in counseling, through "Telehealth," to address his "chronic PTSD, depression, anxiety, [and] insomnia" and was compliant with his medications. Father claimed he was stable and not a risk to the children.

Father expressed his desire to have more time with the children, asserting, "[m]y children and I have the closest bond on earth." Father requested additional time with the children because he felt that a thirty-minute telephone call once a week was inadequate to foster their relationship. Father admitted that he had not visited at the YWCA because he "did not feel comfortable." When questioned by the court, father explained that he believed that a police officer had lied to him, so he did not trust, or at least had to "be cautious," about people from Amherst County and Lynchburg. Father admitted that since December 2019, he had seen the children only six times, approximately, for three hours or less on each occasion.

After hearing the parties' evidence and arguments, the circuit court reviewed the Code § 20-124.3 factors for determining the best interests of a child regarding visitation. The circuit

court found that father's relationship with the children was "broken." Although the circuit court recognized that father had "come a long way," the circuit court found that "the father's got issues he's dealing with, he needs to get his situation completely stabilized." The circuit court granted sole custody to mother. The circuit court awarded visitation to father through the YWCA's supervised visitation program and "additional contact with the children in the therapeutic counseling session." The circuit court maintained father's weekly telephone visitation with the children for thirty minutes. On December 15, 2021, the circuit court entered an order memorializing its rulings. Father now appeals.

ANALYSIS

I. JDR court

Father argues that the JDR court judge was biased and did not comply with the Canons of Judicial Conduct. The Court of Appeals, however, is not a court of general jurisdiction. "Unless a statute confers jurisdiction to this Court, we are without power to review an appeal." *Reaves v. Tucker*, 67 Va. App. 719, 727 (2017) (quoting *Prizzia v. Prizzia*, 45 Va. App. 280, 286 (2005)). Code § 17.1-405(3) states, in pertinent part, that "any aggrieved party may appeal to the Court of Appeals from . . . any final judgment, order, or decree of *a circuit court* in a civil matter . . . ." (Emphasis added.)

Although this matter was initially heard before the JDR court, father appealed the case to the circuit court for a trial—de novo—an entirely new trial conducted without reliance on the rulings of the JDR court. *See* Code § 16.1-296(A). The circuit court's rulings and analysis were completely independent of what the JDR court did or decided. Consequently, because the circuit court conducted a trial de novo (and because this Court does not have the jurisdiction to review the rulings of a juvenile and domestic relations district court directly), we do not consider father's arguments regarding the JDR court judge.

- 8 -

## II. Guardian *ad litem*

Father argues that the circuit court erred by "disregarding serious concerns" about the GAL's "performance while representing the children." Specifically, he suggests that the GAL's investigation was not sufficiently thorough.

"The guardian *ad litem* serves a vital role in our judicial system. The task of the guardian *ad litem* is to rise above the fray of the contending parties to ensure that the interests of persons under a legal disability are 'represented and protected.'" *Wiencko v. Takayama*, 62 Va. App. 217, 233 (2013) (quoting Code § 8.01-9(A)). This Court has held previously that "it would be foolish to reflexively reverse every time . . . [a guardian *ad litem*'s] investigation could have been more thorough." *Id.* at 234-35. We held that "guardians *ad litem* must adapt the depth of their investigation to the unique facts of each case." *Id.* at 235.

As the circuit court correctly advised father, the GAL's role was to represent the best interests of the children, not to present his evidence for him. The circuit court heard evidence concerning the scope of the GAL's investigation. The GAL met with the children, spoke individually with mother and father, reviewed materials father sent to her, and spoke with the children's counselor. The GAL's report was part of the trial evidence; however, the circuit court clearly based its decision on the factors delineated in Code § 20-124.3. We find no error in the circuit court's consideration of the GAL's testimony and report.

Father also argues that the GAL had a conflict of interest because she hired the JDR court judge's wife after the JDR court ruled on custody and visitation. Father asserted that the GAL was "in a position of conflict" at the time of the circuit court hearing because of that hiring decision. The GAL proffered that her employee started working with the GAL on October 4, 2021, and that they did not discuss employment before the final JDR court hearing, held on August 10, 2021. Although the GAL had met the JDR court judge's wife in 2016, the GAL

stated that they "had not interacted personally for close to five years." The GAL argued that once father appealed the JDR court ruling, the case was removed from the JDR court and placed on the circuit court's docket, and "there was no conflict" with the GAL's employment of the JDR court judge's wife in the circuit court. Father responded by arguing that before the JDR court hearing occurred, the GAL should have notified the parties that she knew the JDR court judge's wife.

A guardian *ad litem* "shall faithfully represent" the interest of the child for whom she is appointed, and "it shall be the duty of the court to see that the interest of the [child] is so represented and protected." *See* Code § 8.01-9. "Whenever the court is of the opinion that the interest of the [child] so requires, it shall remove any guardian ad litem and appoint another in h[er] stead." *See id.* "The role of the GAL 'when representing an infant [is] to defend a suit on behalf of the infant earnestly and vigorously and not merely in a perfunctory manner.'" *Breit v. Mason*, 59 Va. App. 322, 340 (2011) (alteration in original) (quoting *Norfolk Div. of Soc. Servs. v. Unknown Father*, 2 Va. App. 420, 425 n.5 (1986)), *aff'd sub nom. L.F. v. Breit*, 285 Va. 163 (2013).

The circuit court held that the GAL had no conflict of interest. The circuit court found that the GAL's employment decisions were made after the parties' hearing in the JDR court. The circuit court further found that "on August the 10th, 2021 when the case was decided," the GAL had "no relationship" with the JDR court judge's wife and they had had "no contact for five years." The circuit court emphasized, "Merely knowing someone . . . doesn't create a conflict" of interest.

The circuit court also examined whether the GAL had a conflict with her clients, the children, and "whether or not that somehow would have interfered with the [j]udge's ability to be fair." The circuit court concluded that it did not. The circuit court further stated that the case

was no longer in the JDR court, and the circuit court had no conflict of interest with the GAL and her employee. Therefore, there was "not a basis for removing" the GAL. Considering the totality of the circumstances in the record, we find no error in the circuit court's denial of father's motion to remove the GAL.

### III. Custody and Visitation

Father asserts that the circuit court made an erroneous decision to award sole custody to mother. He also argues that the circuit court erred by limiting his contact with the children and ordering supervised visitation. Father contends that the circuit court also erred because it did not consider all the Code § 20-124.3 factors and that it should have weighed the factors differently. "We review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022). "We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." *Id.* at 193 (quoting *Bedell*, 70 Va. App. at 504).

When determining a child's best interests "for purposes of determining custody or visitation arrangements," a court must consider nine mandatory factors set out in Code § 20-124.3.[9] Although a circuit court must consider those statutory factors, it determines how to weigh those factors and "is not 'required to quantify or elaborate exactly what weight or consideration it has given to each[.]'" *Wynnycky*, 71 Va. App. at 201 (alteration in original) (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)). "On appeal, we do not reweigh the

---

[9] Code § 20-124.3 lists a tenth factor as "[s]uch other factors as the court deems necessary and proper to the determination."

- 11 -

factors to see if we would have reached a different conclusion; rather, so 'long as evidence in the record supports' the circuit court's determination and it 'has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Brown*, 30 Va. App. at 538).

The record here demonstrates that the circuit court considered each of the statutory factors. It expressly noted the children's ages, their health, and the fact that they were in counseling. The circuit court also considered mother's and father's health, including that father was participating in counseling and "taking a fairly significant amount of medication" and had a caregiver living in his home. The circuit court noted that father was seeking disability because of his PTSD diagnosis and that he had "issues regarding trust." In addition, the circuit court found that father's most recent visit with the children had been "traumatic" for them. The circuit court found that mother and father were unable to "get along" well enough to cooperate with visitation, much less be able to make decisions for the children together. The circuit court stated that it hoped that the parents would continue to play a role in the children's future because the children would benefit from having both parents involved in their lives. The circuit court commended father for moving to Virginia after mother and the children moved so "at least there's the prospect of a better relationship with the children."

After considering all the statutory factors and the lack of consistent visitation, the circuit court found that "the relationship between the father and the children ha[d] been broken." The circuit court found that the children were in counseling and "struggling"; thus, it was father's obligation to "strive to meet them where they are." The circuit court also found that the children need a "safe space just like the father does." The circuit court recognized that father wanted weekend visitation with the children but found that "would be the absolute worst thing" because the children were not ready and therefore a forced weekend visitation schedule would be

counterproductive.  Although father had "come a long way," the circuit court found that father needed to "get his situation completely stabilized" before weekend visitation was an option.

The circuit court held that "the only viable" custody arrangement was to grant sole legal and physical custody to mother.  The circuit court found that father and the children needed to reestablish their relationship and held that visitation supervised by a third party was in the children's best interest at this time.  The circuit court acknowledged that father did not "trust anybody from Amherst to Lynchburg," but the only evidence of a viable third-party supervisor program presented to the trial court was the Lynchburg YWCA program.  Other than suggesting his grandmother's house as a possibility, father presented no evidence to the circuit court of any other options for supervised visitation because he believed that his home was "the best place for them" to visit.[10]  The GAL reported that she had "looked for other visitation centers" that could supervise the visits and accommodate father.  After examining options closer to father in Charlottesville or Richmond, the GAL could not "find a single facility that's currently offering supervised visitation to the outside public that's not being handled through social services" and opined that the YWCA in Lynchburg appeared to be "the only location that's somewhat accommodating."  The circuit court ordered that the visitation continue at the YWCA and explained that it hoped the supervised visitation would make the children "feel comfortable."  The circuit court also continued the weekly telephone contact, which the court found could be "hard with young children," but the children were getting older and older kids get better with using the phone.  The circuit court reiterated that its reasons for the custody and visitation rulings

---

[10] Father also presented no evidence that the visitation room at the YWCA was inaccessible to him when he used his mobile scooter.  Accordingly, we will not consider his second assignment of error alleging that the circuit court erred by "not carefully considering the nature of the fathers disabilities" by selecting the YWCA as the visitation site.  "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)); *see* Rule 5A:18.

were because father and the children had not "had any meaningful relationship . . . for some time," and father needed to demonstrate his stability.

The record establishes that the circuit court considered all of the Code § 20-124.3 factors, and the evidence supports the circuit court's custody and visitation rulings. "[C]ircuit courts are charged with protecting the child's best interests and are granted significant discretion and latitude to craft custody arrangements to ensure as much as possible that the child's interests are, in fact, served and protected." *Wynnycky*, 71 Va. App. at 204. The circuit court clearly considered the children's best interests in determining custody and visitation. "Because evidence supported the circuit court's factual findings that underlie the circuit court's weighing of the factors and there is nothing inherently unreasonable in its weighing of those factors, 'its ruling must be affirmed on appeal.'" *Id.* at 201 (quoting *Brown*, 30 Va. App. at 538). Accordingly, we find that the circuit court did not err in awarding sole legal and physical custody to mother and supervised visitation to father.

CONCLUSION

For all of the foregoing reasons, we affirm the circuit court's decision.

*Affirmed.*