COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

**PUBLISHED**

RYAN BEDELL

                                                      OPINION BY

v.      Record No. 1687-18-2            JUDGE WESLEY G. RUSSELL, JR.
                                                JUNE 11, 2019

CHRISTINA PRICE AND
 WALTER RYAN MATZUK

FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Michael P. Tittermary (Brice E. Lambert, Guardian *ad litem* for the
minor child; The Witmeyer Law Firm, PLC; Lambert & Associates,
on brief), for appellant.

Taylor B. Stone (Janus & Stone, P.C., on brief), for appellee
Christina Price.[1]

Misty D. Whitehead (Kelly B. St. Clair; Kelly B. St. Clair, PLLC, on brief),
for appellee Walter Ryan Matzuk.

Ryan Bedell appeals an order of the circuit court awarding primary physical custody of a

minor child to appellee Christina Price, the child's mother; joint legal custody of the child to all

three parties; and visitation to appellee Walter Matzuk. Bedell specifically challenges the circuit

court's finding that Matzuk is a parent of the child and its awarding legal custody and visitation to

Matzuk on that basis.[2] For the reasons that follow, we reverse the judgment of the circuit court and

remand for further proceedings.

---

[1] Although nominally an appellee, Price joins in the arguments raised by Bedell and asks
that the Court grant the relief Bedell seeks.

[2] Bedell does not challenge the circuit court's award of physical and legal custody to
Price.

BACKGROUND

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 40 (2014) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)).

Price gave birth to a child on April 11, 2012. In the time period surrounding the child's conception, Price was engaging in sexual relations with both Bedell and Matzuk. She informed each of them that there was a chance he was the father. With all parties knowing that either Bedell or Matzuk could be the biological father, Matzuk agreed to be the child's father. Matzuk signed an acknowledgement of paternity pursuant to Code § 20-49.1(B)(2), and the child was given Matzuk's name. In signing the acknowledgement, Matzuk attested that he was the biological father of the child. Bedell testified that he did not seek a DNA test at the time because he did not have access to the child and "once I saw [Price and Matzuk] back together, I figured that there [had been] a test."

Price moved in with Matzuk when she was about six months pregnant and, after the child was born, Matzuk was involved in the care of the child. Price and Matzuk had a falling out in 2013, and Price moved out for several months, but returned. She permanently left the residence in 2014, but continued to see Matzuk and allow the child to spend time with him. When Price left in 2013, she filed petitions to determine custody and visitation, but withdrew them. In November 2014, Price filed new petitions, commencing the instant proceedings.

While the petitions were pending, Price and Matzuk created their own custody and visitation schedule, splitting time "50/50" and sharing parenting responsibilities. The child remained on Matzuk's insurance, and Matzuk's mother was actively engaged in raising the child. Matzuk continued to contribute financial support for the child, and the child continued to call Matzuk "daddy."

After an argument in early 2015, Price decided she wanted to know for certain who was the father of her child, so she resumed contact with Bedell, who had never met the child, to have a DNA test performed. The test revealed that Bedell was the child's biological father, and thereafter "[Bedell] was pretty much over [at Price's] house every time" she had custody of the child. Price and Bedell started living together in early summer 2016. By the time of trial, the child was referring to Bedell as "Bedell," "daddy Bedell" or also just "dad."

Without consulting Matzuk, Price, based on the DNA test results, sought to have the Division of Vital Records issue a new birth certificate for the child that named Bedell as the father. Such a certificate was issued on May 9, 2016.[3]

When asked at trial about Matzuk's role going forward, Price testified, "I believe [my child] and Mr. Matzuk keeping a relationship would be best with visitation . . . just enough time for them to keep a relationship." She stated that she was unaware of how Matzuk parents the child and asserted her belief that the child and Matzuk's mother "ha[d] a strong relationship." When he testified, Bedell "acknowledge[d] that there is a connection, a bond there[,]" between the child and Matzuk and suggested that visitation "every other weekend or maybe one weekend every three weeks" might be appropriate. Price agreed with that suggestion. Matzuk indicated a preference for "week on, week off schedule."

Three experts presented testimony. They testified to child attachment issues, their observations regarding the child's well-being and relationships with the parties, and the effects that poor and abusive communication between the parties had on the child and the child's relationships.

Although the trial was held in the fall of 2016 and the circuit court apparently issued a letter ruling, a final order regarding the custody and visitation matters was not entered until September 24,

---

[3] The propriety of the Division of Vital Records issuing the replacement certificate is not before us on appeal.

2018.[4] Noting that "there are special circumstances in this case that must be taken into consideration[,]" the court expressly found that "Matzuk is by law a parent to the minor child" based on Matzuk's and Price's acknowledgement of his paternity in compliance with Code § 20-49.1(B)(2). The court further noted that, when Bedell later submitted to a DNA test, "[t]he test confirmed he is the biological father." The court then determined that the child's "best interests would be served by having [Price, Matzuk, and Matzuk's mother] being a part of [the child's] life" and further "served by all three [named] parties in these cases being involved in [the child's] life in a meaningful way."

Based on its findings, the circuit court awarded Price primary physical custody and ordered that she, "Bedell and Matzuk shall have joint legal custody" whereby "[a]ll decisions regarding the minor child's education, health and housing shall be discussed between the three parties . . . ." The court further established a detailed schedule of visitation to occur between Matzuk and the child.

While the custody and visitation petitions were pending, Price filed additional actions seeking to disestablish Matzuk's claim of paternity and to establish that Bedell was the child's father. That matter was assigned to a different circuit court judge, who, after conducting a hearing *ore tenus*, granted the relief Price had requested. Specifically, by final order also signed on September 24, 2018 (but containing a reference that it was entered *nunc pro tunc* to September 17, 2018), the circuit court in that case ruled that "Matzuk is hereby disestablished as the father of" the child and that "Bedell is hereby established as and determined to be the father of" the child. Matzuk appealed those rulings to this Court, and we affirmed the circuit court's judgment. See Matzuk v. Price, et al., Record No. 1635-18-2, ___ Va. App. ___ (2019) (this day decided).

---

[4] From the record, it appears that the parties did not agree on the terms of the order, explaining the delay in it being presented to the circuit court for entry. When the trial judge signed the order, he noted that he was doing so "*nunc pro tunc* 4-3-17[.]"

In the instant case, Bedell appeals the judgment of the circuit court regarding several issues. First, he challenges the circuit court's conclusion that Matzuk is a parent of the child. Next, he argues that, as a result of the mistaken conclusion regarding Matzuk being a parent, the circuit court erred in its award of custody and visitation to Matzuk. Finally, he argues the circuit court erred in its disposition of his motion for rehearing.[5]

ANALYSIS

I. Standard of Review

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28 (1990). "A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Stadter v. Siperko, 52 Va. App. 81, 88 (2008). "Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 336 (1992). Nevertheless, we recognize that a "trial court 'by definition abuses its discretion when it makes an error of law[,]'" Shooltz v. Shooltz, 27 Va. App. 264, 271 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)), and will reverse a factual finding of a trial court in such matters only if it is "plainly wrong or without evidence to support it," Rubino v. Rubino, 64 Va. App. 256, 262 (2015) (quoting Farley, 9 Va. App. at 327-28).

---

[5] Our resolution of Bedell's assignment of error regarding the circuit court's conclusion that Matzuk was a parent to the child and the effect of that resolution on the circuit court's custody and visitation rulings obviates the need for us to address the assignment of error related to his motion for rehearing. Accordingly, we do not address that assignment of error.

II.  Primacy of Parents in Matters of Custody and Visitation

"[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by" the United States Supreme Court. Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion); see also Code § 1-240.1.  "[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."  Prince v. Massachusetts, 321 U.S. 158, 166 (1944).

As a result of this liberty interest, a parent enjoys a favored position when it comes to custody and visitation issues regarding his or her child.  Regarding custody, all "parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody."  Stanley v. Illinois, 405 U.S. 645, 658 (1972); see also Code § 20-124.2(B) (providing that although a court making a custody determination "shall give primary consideration to the best interests of the child[,]" it also must "give due regard to the primacy of the parent-child relationship" and may "award custody or visitation to any other person with a legitimate interest" only if there has been "a showing by clear and convincing evidence that the best interest of the child would be served thereby").  Furthermore, a court addressing visitation issues related to a child must give at least some deference to the wishes of a fit parent.  Troxel, 530 U.S. at 72-73. In short, with respect to a parent's right to control the upbringing of his or her child, any "state interference with that right must be justified by a compelling state interest."  Williams v. Williams, 24 Va. App. 778, 780 (1997), aff'd as modified, 256 Va. 19 (1998).

III.  The Circuit Court's Determination that Matzuk is *a* Father to the Child

Underlying the circuit court's decisions regarding physical custody, legal custody, and visitation was its conclusion that Price, Bedell, and Matzuk are all parents to the child.  No one disputes the circuit court's determination that Price, the biological mother, is one of the child's

parents. The dispute is over which of the two men is the father and whether the circuit court erred in declaring them both to be so.

Virginia law recognizes that a parent-child relationship can arise from either biology or law. We recently held that a parent-child relationship is created "upon either the contribution of genetic material through biological insemination *or* by means of legal adoption." Hawkins v. Grese, 68 Va. App. 462, 472 (2018) (emphasis added). Thus, at least in this context, Virginia "law, like nature itself, makes no provision for dual fatherhood." Michael H. v. Gerald D., 491 U.S. 110, 118 (1989) (plurality opinion).[6]

Nevertheless, the circuit court, no doubt focused on how to protect the best interests of the child in this unconventional situation, concluded that the child has two fathers. The court found that Bedell is the child's "biological father" and that Matzuk, as a result of completing the acknowledgment of paternity pursuant to Code § 20-49.1(B)(2), is "by law" the child's father.

Based on the unchallenged DNA evidence, the circuit court correctly concluded that Bedell is the child's biological father. The evidence allowed for no other conclusion. Accordingly, we turn to the circuit court's conclusion that, despite this evidence, Matzuk is also the child's father.

Although the circuit court characterized Matzuk as the child's father "by law," the basis of Matzuk's claim is the acknowledgement of paternity he signed. That document was his sworn statement asserting that he was, in fact, the child's *biological* father. Because the competing claims of fatherhood are based on each man being the biological father, a scientific impossibility, both claims cannot be simultaneously valid.

---

[6] When a court allows a non-biological father to adopt a child, the adoption order severs the parent-child relationship between the biological father and the child, meaning that, as a matter of law, the child has only one father. See Code § 65.2-1200 *et seq.* (Virginia's adoption code).

Rare though it might be, the General Assembly recognized the possibility of this situation when it adopted Code § 20-49.1(B)(2) as a method of establishing paternity. The statute expressly provides that paternity established through such a written acknowledgment "shall be binding and conclusive *unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material mistake of fact.*" Code § 20-49.1(B)(2).

Although the instant proceedings below specifically dealt with custody and visitation and the petition for disestablishment of paternity was dealt with in another proceeding before another judge, the unchallenged DNA evidence in this case conclusively established that Matzuk's claim in the acknowledgement of paternity that he was the child's biological father represented "a material mistake of fact." Thus, pursuant to the plain language of Code § 20-49.1 and for the same reasons and rationale underlying our decision in Matzuk, Record No. 1635-18-2, ___ Va. App. ___ (this day decided), the evidence in the instant case required the circuit court to reject Matzuk's claim to be the child's parent. Accordingly, the circuit court erred in concluding that Matzuk was a parent of the child for the purpose of determining custody and visitation.[7]

## IV. Circuit Court's Order Regarding Custody and Visitation

As noted above, a court making custody and visitation decisions, although focused on the best interests of the child, must give a special solicitude to the rights and interests of a child's parents. See Troxel, 530 U.S. at 72-73; Stanley, 405 U.S. at 658; Code § 20-124.2(B). In crafting its custody and visitation order, the circuit court considered Matzuk a parent and granted him the special solicitude that accompanies that status. Given our conclusion that Matzuk is not

---

[7] In concluding that Matzuk is neither a biological nor legal parent to the child, we do not intend to impugn either Matzuk or the relationship he has built with the child. From the record before us, Matzuk was willing to accept parental responsibility on the mere chance that he was the child's father. His attempt to accept responsibility and his continued efforts to support the child are to be commended rather than condemned.

the child's parent, this was error and requires that we reverse the circuit court's judgment regarding custody and visitation.

Having reversed those judgments, we remand the case for further proceedings related to custody and visitation. Although parents are due a special solicitude regarding matters of custody and visitation, there are circumstances, albeit very limited circumstances, in which third-party custody and visitation may be appropriate. See Code § 20-124.2(B). For a court to order such a third-party arrangement requires a detailed inquiry into the fitness of the parents, the relationship of the third-party to the parents and the child, the best interests of the child, and many other factors.

Here, although the circuit court expressly noted that the case presented "special circumstances[,]" no inquiry related to third-party custody and visitation was conducted. In fact, such an inquiry was not possible given the circuit court's conclusion that Price, Bedell, and Matzuk were all parents of the child. To the circuit court, they were all parents, and therefore, none was or could be considered to be a "[p]erson with a legitimate interest" as defined by Code § 20-124.1. Accordingly, we remand the matter to the circuit court to conduct an inquiry regarding possible third-party visitation, giving due consideration to Price and Bedell's constitutionally protected liberty interests in parenting their child.[8]

CONCLUSION

For the foregoing reasons, we conclude that the circuit court erred in concluding that Matzuk was a parent of the child. As a result of that error, the circuit court necessarily erred in the manner in which it determined custody and visitation. Accordingly, we reverse the judgment of the circuit court and remand the custody and visitation issues for further proceedings

---

[8] In remanding the case, we offer no opinion as to whether or not a third-party visitation arrangement is or is not appropriate in this case. Rather, we remand to allow a record to be developed so that the question may be addressed and answered appropriately.

consistent with this opinion and our opinion in <u>Matzuk</u>, Record No. 1635-18-2, ___ Va. App. ___ (this day decided).

<u>Reversed and remanded.</u>