COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Russell, Malveaux and Senior Judge Clements
Argued by teleconference


NORMAN M. ACHIN

                                      MEMORANDUM OPINION[*] BY
v.      Record No. 1466-19-4          JUDGE WESLEY G. RUSSELL, JR.
                                            JULY 28, 2020

SANDRA I. OCHOA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Norman Achin, *pro se*.

Ashley Kempczynski; Ellen M. Dague, Guardian *ad litem* for the
minor child (Timothy Bryan Beason; Dipti Pidikiti-Smith; Legal
Services of Northern Virginia, on brief), for appellee.


Norman Achin, father, appeals an order of the circuit court awarding Sandra Ochoa, mother,

sole legal and primary physical custody of their minor child and limiting his visitation to two

two-hour supervised visits per month. Finding no reversible error, we affirm the judgment of the

circuit court.

BACKGROUND

"When reviewing a trial court's decision on appeal, 'we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'"

Brandau v. Brandau, 52 Va. App. 632, 635 (2008) (quoting Smith v. Smith, 43 Va. App. 279,

282 (2004)). "That principle requires us to discard the evidence of the appellant which conflicts,

either directly or inferentially, with the evidence presented by the appellee at trial." Id. (quoting

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Petry v. Petry, 41 Va. App. 782, 786 (2003)).  Accordingly, we present the facts in the light most favorable to mother.

The parties were married in May 2003 and had a child on August 24, 2004.  The child is diagnosed with high functioning autism.  As part of their ultimate divorce settlement, the parties entered into an agreement regarding custody and visitation of the child, which was memorialized in a consent order entered by the City of Alexandria Juvenile and Domestic Relations District Court (JDR court) on August 16, 2011.  The order provided that the parties would share joint legal custody and that mother would have primary physical custody.  Father was awarded visitation for four hours twice a week plus one overnight visit.  Father also was afforded "reasonable telephone visitation" with the child.  The parties further agreed that there would be no contact between them except as required to address the child's needs.

Several years later, the parties were again in litigation, raising issues regarding compliance with visitation orders, the sharing of medical expenses, and alleged abuse by father.  A guardian *ad litem* (hereinafter "guardian") was appointed to protect the interests of the child.  Ultimately, the parties reached a new visitation agreement, memorialized by order entered by the circuit court on June 7, 2016.  In addition to other minor changes, the order amended the 2011 order by establishing a specific custody exchange location and holiday visitation schedule; the order otherwise directed that "the parties shall abide by all other provisions of the [2011] [o]rder that are not in conflict with this [o]rder."  The matter was remanded to the JDR court.  After father sought a show cause order against mother, the JDR court entered a supplemental order on March 3, 2017, whereby father was awarded "a minimum of two telephone calls per week . . . between the hours of 4:00 p.m. and 6:00 p.m."  The order noted that "Monday and Wednesday were preferred contact days" for the telephone calls.

In early 2018, father filed in the JDR court a motion to amend the 2016 visitation order. He alleged his relocation to another jurisdiction, a modified work location, and a change in academic calendars warranted a modification. Father requested that he be permitted to pick up the child from school in certain circumstances, that the child exchange location be changed to accommodate his relocation, and that some modifications to the holiday visitation schedule be made. Mother also filed a motion to modify custody and visitation; she requested that a guardian be appointed for the child, that mother be granted sole legal custody, that father's in-person weekday visitation be terminated, and that the telephone visitation schedule be modified. On March 27, 2018, after a hearing, the JDR court entered an order reappointing the previous guardian for the child and setting the matter for trial; the order indicates both mother and father were present at the hearing.

On June 5, 2018, the JDR court conducted an *ore tenus* hearing on the competing motions. As a result of the hearing, the JDR court made certain factual findings and entered an order granting mother sole legal and physical custody but maintaining father's in-person visitation while specifying further conditions as to in-person and telephone visitation and payment of medical expenses. Father appealed the JDR court order to the circuit court, which set the matter for a scheduling hearing on August 8, 2018.

On June 22, 2018, father filed a motion *in limine* with the circuit court to remove the guardian "for cause." Father alleged that the guardian was biased in favor of mother, failed to provide him proper notice of her appointment in the JDR court, appeared to collude with mother's counsel, and acted contrary to professional standards. In support of his motion, father chronicled portions of the proceedings before the JDR court and enumerated numerous ways in which he disagreed with the guardian's investigation. Attached to his motion were notes he took summarizing his account of the guardian's visit to his home, of JDR court proceedings, of an individualized education plan meeting, and telephone conversations with the child.

While his motion was pending, on July 24, 2018, father was charged in Fairfax County with two felonies of a sexual nature related to a child under fifteen years of age. Based on the criminal charges against father, the guardian filed emergency motions to suspend visitation and for a psychological evaluation of father. If visitation were to continue, the guardian asked that the duration be limited and that it be supervised. Mother filed a motion joining in the guardian's request regarding visitation.

By order dated August 17, 2018, the circuit court partially granted the emergency motions. The circuit court directed that, *pendente lite*, father's in-person visitation be limited to two hours a week in a public setting with an approved independent supervisor. The circuit court denied the request for a psychological examination of father. On September 4, 2018, the circuit court entered an order appointing the guardian to serve in that capacity in relation to the matters regarding the child that were pending in the circuit court.

In November 2018, father sought to subpoena medical records of mother. He specifically requested "all records of [mother] from July, 2003, until July, 2009 . . . ." In response, mother filed a motion to quash. On November 28, 2018, the circuit court conducted a hearing on father's motion to remove the guardian and also addressed father's request for mother's medical records.

Father first offered to provide the circuit court "a little background," but the circuit court interrupted, stating, "I don't need any background, I've read everything. Let's hear the evidence." Father testified to his interactions with the guardian; he stressed that the guardian had had no contact with him from 2016 until she "appeared again" in March 2018. Father testified that he had not received any paperwork regarding her reappointment, but that when they met in March 2018, the guardian "assured me she had been appointed."

Father further asserted that the guardian had not conducted a proper and sufficiently thorough investigation. He also disputed the findings she made in her written reports; although the

- 4 -

guardian had filed the reports with the circuit court and had asked that the circuit court "receive" them, they were not entered into evidence as exhibits. Father contended the guardian impermissibly had recorded him during some of their conversations. Father also raised with the circuit court allegations of mother's failure to comply with previous court orders and commented on his criminal case.

On cross-examination, father affirmed that the guardian had made no recommendations against him in 2016 and that there was no litigation related to the child in 2017. Father acknowledged that the guardian had informed him when she visited him in March 2018 that she had been appointed, but he emphasized that he had seen no JDR court order of appointment. Although no such order was introduced into evidence, it appears from the transcript that such an order was shown to him during his testimony. He did not challenge the validity of the circuit court's September 2018 appointment order.

Mother testified that the guardian was "very professional" and that the child liked her. Mother described her daughter as "happy to see" the guardian.

In making its ruling, the circuit court commented that father "disagree[d] with [the guardian's] opinion" and that while the guardian served as "sort of an adjunct," it was father's burden "to present the evidence that would support a modification of the last custody order." The circuit court added, "You clearly cannot co-parent, which is the reason why I suspect the [JDR court] modified the custodial arrangement which [ruling] you have appealed." It further noted that the guardian had been serving in that capacity "for an extended period of time [and] knows the parties well" and found that "it would do [the child] a disservice . . . given her autism diagnosis and associated issues with that . . . to remove the GAL . . . ." The circuit court further stated that it had no evidence that the guardian was "not faithfully executing her role as a GAL." The circuit court denied father's motion after concluding that "the evidence has been presented here today does not

- 5 -

in this court's opinion support a motion to disqualify the guardian . . . nor do I think it would be in the child's best interest to do that."

The circuit court also denied father's request for the specified medical records. The circuit court reasoned that records from 2003 to 2009 were not pertinent to a proceeding related to the modification of a 2016 custody and visitation order.

Father's underlying appeal of the JDR court order was continued several times to allow for resolution of father's criminal charges. Ultimately, he was convicted of violating Code § 18.2-374.3, which criminalizes the use of communication devices to solicit a minor for sexual purposes. Father's sentencing hearing was set for August 2019.

At the end of June 2019, the circuit court conducted a two-day *ore tenus* hearing addressing the parties' custody and visitation issues. The circuit court noted that it "is here for a trial *de novo*." At the outset of trial, father requested a continuance, citing as his primary reason that it was his desire that the child testify as a witness. He further stated that the child's autism specialist should have the opportunity to testify. Father acknowledged that he had not subpoenaed either his child or the specialist to appear. Arguing that "the court needs to have data points . . . to make some sort of a decision," father also sought more time to allow for a custody evaluation based on parent/child assessments and for a psychological examination of mother.

Mother objected to the continuance, noting that the matter had been pending in the circuit court for approximately a year so that there had been ample time for father to address the issues prior to trial. The circuit court agreed with mother and denied father's motion to continue. The circuit court suggested that, if father was not prepared, the circuit court could dismiss the case and remand it to the JDR court, where father could file a new motion to modify custody and visitation if he thought there had been a material change in circumstances. Father elected to proceed.

Father called mother and himself as witnesses. The parties' testimony focused on communication between them; disagreements regarding the child's care, to include medical treatments, nutrition, and education; and father's allegations that mother was denying him court-ordered visitation and manipulating their daughter. Father more specifically asserted that mother "refuses to allow me to parent" and had no consideration of his schedule. Father questioned mother regarding instances where she did not agree with father. Father provided examples of where he and mother could not reach consensus and told the circuit court, "I'm not difficult[; mother] is the one who is difficult." On cross-examination, father acknowledged that he and mother did not "have a good working relationship" and "have historically had a hard time making decisions together[.]" Father stated, however, that he is "always open though" and that difficulties exist "[t]o the extent that the mother has refused to" cooperate in decision-making. He asserted that they could co-parent, but that mother "refuses." He denied any wrongdoing related to his criminal conviction.

Mother conceded that she did not always respond to father's messages, but explained that she often found them offensive or that they were sent merely to provoke a fight. She denied refusing him his ordered visitation, but agreed she usually did not allow him to make up cancelled visitations.

Father also called Elaine Vadas, who served as the supervisor for both father's in-person and phone visitation. She expressed that father's in-person visits were going well and that she had not observed anything inappropriate during them. She explained that numerous visitations had been cancelled, but that cancellations were not due to any denial of ordered visitation by mother. She added, however, that mother did not always agree to rescheduling the cancelled visitations.

Vadas was asked about a phone call between father and the child during which the child became agitated. Specifically, she was asked whether the child "said something to the effect of not wanting to see her father any more[.]" Without objection, Vadas answered, "[s]he did at first, yes."

- 7 -

Vadas added that the child "got agitated when he brought that up, but afterwards at the end, she said that she does want to see him, but she was agitated at first."

In addition to adducing testimony, father showed the circuit court a video that he had recorded on his cell phone. The video depicted father conversing with the child in his car while he was driving. Father was questioning the child on why mother was making her say things against father. The child appeared uncomfortable during the encounter. Although father presented several documents during his case-in-chief, he did not move to introduce any of them into evidence.

At the close of father's evidence, the guardian moved to strike father's appeal with respect to custody. The circuit court noted that there had been a material change in circumstances, but found that father "ha[d] not established to the court's satisfaction that it would be in [the child's] best interest to modify the custodial arrangement, that being [mother] having sole [legal] custody and primary physical custody." Father interjected, inquiring, "the issue of custody I thought was a *de novo* trial." The circuit court responded, "it is, and you've had your opportunity to present your evidence." Father continued, "I don't understand why you would strike that necessarily until after sentencing." The circuit court explained, "I don't find that the evidence is sufficient, that you have established a *prima facie* case that it is in [the child's] best interest to change custody . . . ." The circuit court granted the motion to strike regarding custody, then proceeded to take additional evidence and consider the issue of visitation.

Mother called herself back to the stand. She expressed her desire to "minimize this visitation as much as we can." She suggested father's visitation be limited by continuing with supervision in a public space, reducing the duration, and setting a specific alternative visitation time for instances when the normal visitation is cancelled. Without objection, mother commented that their daughter "is not really asking me to be with her father, is not saying that she's missing her father, is not saying that she's expecting the visitation."

Once the evidence had been concluded, the guardian spoke on the child's behalf. She relayed, "in consideration of factor eight, the reasonable preference of the child, I am happy to give that to the court now." The guardian informed the circuit court that she had asked the child "how things are going and if she would like any changes" and noted that the child's "statements are consistent and she does have a preference," but the guardian further stated that she did not "want to cause an issue with stating the child's preferences, perhaps without a ruling that the court would like to hear what the child said." The circuit court then queried regarding its authority to "just hear the GAL reporting the child's hearsay statements."

Mother argued that, per Virginia standards, a guardian *ad litem* is required to "communicate the wishes of the child to the court," and father sought to "remind the court also that we've heard testimony from Ms. Vadas indicating quite something different as to [the child's] preference" and asserted that he "would testify to that fact." When father reasserted that any statement regarding the child's preference constituted hearsay, the circuit court overruled the objection and permitted the guardian "to make reference to her investigation" and to convey "the child's preference."

The guardian noted her belief that the child's preference was "not what's going to be pivotal to th[e] court's decision today." She highlighted father's demeanor, which she described as "so aggressive and so hostile and so argumentative." She expressed that she had "huge" concern for the child, citing "what [she] believe[d] is an undiagnosed and untreated mental health condition [of father's]." She further emphasized the video, which she called "disturbing." Father did not contemporaneously challenge these characterizations. The guardian relayed that, "if the court is again wanting to know what [the child's] most recent statements are, she would tell the court I can handle myself but not my father." Father interjected, stating, "we don't know what she would tell the court"; the circuit court responded that, even though the statements were hearsay, it had "already ruled that I'll permit . . . the [guardian] . . . to offer statements as to what [the child's] preference is."

The circuit court further noted that the fact it had not heard directly from the child "bears on the weight that this court will give" the child's purported preference. Father then requested that the guardian indicate whether she was relaying direct quotations of the child or paraphrasing.

Ultimately, the guardian told the circuit court,

> The quote is I can handle myself but not my father, end quote. [The child] stated that she only wants to see her father one time per month and that she does not want to visit at her father's home. She's not ready to go to his house. Those last . . . sentences . . . are not direct quotes.

The guardian also asserted that the child's opinion, as demonstrated in the video, had not changed.

At the conclusion of all the evidence and argument, the circuit court found that father's "supervised visitations have been appropriate and going well." Nevertheless, noting the additional difficulty in parenting an autistic child, the circuit court concluded that the parents "cannot communicate in a reasonable way that would help facilitate a more cooperative custodial schedule." Noting father's recent criminal conviction, the circuit court reiterated that mother was to have sole legal custody and primary physical custody, but that father "should continue to have supervised visitation." It expressly rejected mother's suggestion that father's visitation be reduced to one-hour sessions and did not limit visitation to once a month, despite the guardian's statement that such limitation was the child's preference. The circuit court expressly stated it based its decision on its review of all the factors set forth in Code § 20-124.3. The circuit court concluded that the best interests of the child would be served by continuing visitation in a public space with a professional supervisor. The visits were to continue to occur in two-hour sessions twice a month. Over father's objection on Eighth Amendment grounds, the circuit court further ruled that father was to be responsible for any costs associated with his exercising his visitation rights. Visitation was to be suspended in the event of father's incarceration.

The circuit court entered an order memorializing its rulings on August 1, 2019. The circuit court attached to its order an appendix setting forth numerous specific findings of fact. Among them were that "the parents are completely unable to co-parent, have no respect for each other, and cannot communicate"; that father acted appropriately during visitations; and that mother "did not always allow missed visits to be rescheduled, but [she] never cancelled a visit." In evaluating the factors required under Code § 20-124.3, the circuit court considered as "[s]ome of the most compelling evidence" the video "in which [father] is questioning the child and coaching her to say certain things about the [m]other" as well as emails between the parties, showing that father "is controlling, argumentative, manipulative, and demean[ing of mother] in front of the child." The circuit court also noted father's criminal conviction, the child's age, and her special needs.

Also attached to the order were father's objections to the order. Included in his "Opposition to Court Order," were challenges to the circuit court's characterizations of the video and mother's alleged denial of father's visitation, requests for added specificity and clarification, and requests for reconsideration of the ordered visitation.

Father noted his appeal of the August 1, 2019 order to this Court.[1] In what can be described as a jumbled opening brief, father raises numerous issues, often coupling unrelated matters within the same assignment of error. In closely reviewing his appeal, we have determined that father alleges that the circuit erred in: 1) "allowing" certain alleged actions of guardian; 2) denying his motion to continue; 3) failing to conduct a trial *de novo*; 4) considering the guardian's recitation of the child's preferences; 5) denying him certain constitutional rights; and 6) weighing the evidence and statutory factors as it did. We address these issues in turn.

---

[1] Despite being the party to initiate the appeal, father argues on brief that the August 2019 order is not a final order because it fails to dispose of all issues, specifically by failing to set forth a detailed holiday visitation schedule as was provided by the June 2016 order. Contrary to appellant's belief, the August 2019 order supplants completely the previous order, leaving nothing more to be done. Accordingly, it is a final order subject to our review.

- 11 -

ANALYSIS

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." Niblett v. Niblett, 65 Va. App. 616, 623 (2015) (quoting Stiles v. Stiles, 48 Va. App. 449, 453 (2006)). "[T]he party who asserts the contrary is required to overcome the presumption by record proof." Hart v. Hart, 27 Va. App. 46, 70 (1998) (quoting Broom v. Broom, 15 Va. App. 497, 504 (1992)). We further acknowledge that "[i]n matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child[,]" Bedell v. Price, 70 Va. App. 497, 504 (2019) (quoting Farley v. Farley, 9 Va. App. 326, 327-28 (1990)), and the circuit court is vested with "broad discretion in making the decisions necessary to guard and to foster a child's best interests," Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Eaton v. Dep't of Soc. Servs., 66 Va. App. 317, 324 (2016)). "An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." Id. (quoting Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 764 (2014)).

I. Issues related to the guardian

Father first alleges that the circuit court erred in "allowing [the guardian] to neglect to provide [father] evidence she was properly re-appointed." However, his argument does not address the guardian's appointment in the circuit court, but rather, is a complaint that the guardian did not show him the JDR court order appointing her to serve as guardian prior to the JDR court trial. Thus, although he styles it as an error of the circuit court, this portion of father's challenge regarding the guardian is to the actions of the JDR court related to the guardian's conduct in that court.

Our domestic relations jurisdiction is limited to reviewing decisions made by circuit courts. See Code § 17.1-405(3). See also Gerald v. Charlottesville Dep't of Soc. Servs., No. 0918-18-2, at *7 (Va. Ct. App. Mar. 19, 2019) (recognizing that the Virginia Court of Appeals is without

- 12 -

authority to review rulings of a JDR court). As such, we may take cognizance of issues pertaining to the guardian's appointment by and in the circuit court, but not any alleged defect that occurred in the JDR proceedings. Accordingly, the issue presented by father is not properly before us.

Father next contends that the circuit court erred in allowing the guardian to "testify as [an] expert witness . . . about father's mental fitness." In his opening brief, father cites to written reports of the guardian and to statements the guardian made in closing argument as to where the alleged error occurred. Because the guardian's reports were not formally admitted as exhibits at trial, they are not part of the record before us on appeal, and we are unable to consider them. See Rule 5A:7. With respect to the guardian's in-court statements, father failed to make a contemporaneous objection to them, so his argument in this regard is waived on appeal. Rule 5A:18.

Regarding the guardian, father next argues that the circuit court "[a]bused its discretion and plainly erred by allowing" the guardian "to fail to uphold American Bar Association Standards of Professional Conduct" and to "act in bad faith to violate [father's] due process and destroy bonds of affection between father and child." Father again fails to assign error to any specific action of the circuit court; instead he reasserts ways in which he alleges the guardian failed to meet his understanding of certain nonbinding "performance standards." That no ruling of the circuit court is challenged is made clear in that what underlies father's argument on appeal relates to alleged actions or omissions of the guardian that occurred prior to the initiation of proceedings in the circuit court. Accordingly, his assignments of error in this regard present no ruling of the circuit court subject to our appellate review. Code § 17.1-405(3); see also Gerald, No. 0918-18-2.

Father also assigns error to the circuit court's decision to deny his petition to remove the guardian, a ruling that the circuit court in fact did make. In support of his argument, father asserts that the guardian's reports were "divisive, dishonest, and unhelpful" and that the guardian offered

- 13 -

only "erroneous, libelous, grossly distorted, or outright fictitious accounts." Father also complains that the circuit court "took little notice of [his] evidence" regarding the guardian's conduct.

In denying father's motion to remove the guardian, the circuit court clearly rejected father's contentions regarding the guardian's behavior. As factfinder, the circuit court was free to disbelieve father's charges of misconduct by the guardian. "[T]he credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact." Yopp v. Hodges, 43 Va. App. 427, 439 (2004). Given the record before us, we cannot say that the circuit court erred in denying father's request that the guardian be removed.

## II. Motion to continue

"The decision of whether to grant a continuance is committed to the discretion of the circuit court." Shah v. Shah, 70 Va. App. 588, 593 (2019). "We will reverse 'a circuit court's ruling on a motion for a continuance . . . only upon a showing of abuse of discretion and resulting prejudice to the movant.'" Id. (ellipsis in original) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007)).

As grounds for his motion to continue, father noted his desire for more time to enable him to obtain additional evidence through subpoenaing witnesses and to allow a formal custody evaluation to be performed. When he requested the continuance at issue, the matter had been pending in the circuit court for approximately one year. Father had more than sufficient time to subpoena the witnesses and to seek a formal custody evaluation, and he provided no compelling reason for his failure to do so. Because father had more than sufficient time to prepare for trial, it was within the circuit court's purview to consider father's last-minute motion to continue a delay tactic and to find that the child's best interests would not be served by additional delay. Accordingly, the circuit court did not abuse its discretion in denying the motion to continue.

- 14 -

### III. Failure to conduct *de novo* trial

Father contends that the circuit court failed to afford him a trial *de novo*. It is well established that, under Virginia law, "[a] party appealing to a circuit court has the right to a *de novo* trial on appeal from 'any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction.'" Alexander v. Flowers, 51 Va. App. 404, 413 (2008) (quoting Code § 16.1-296). The appealing party "has the right to a *de novo* trial 'unhampered and unprejudiced' by the lower court's ruling." Id. at 414 (quoting Baylor v. Commonwealth, 190 Va. 116, 120 (1949)).

Any review of the record reveals that the circuit court conducted the required trial *de novo*. The circuit court here conducted a two-day evidentiary hearing in which father was afforded the opportunity to testify on his own behalf, call and cross-examine witnesses, and offer any exhibits he desired. The record demonstrates that, upon conclusion of the hearing, the circuit court rendered its decision to modify custody and visitation based on the evidence presented at that hearing, as set forth in the circuit court's expressed ruling and findings of fact, both oral and written. Simply put, father's argument that he was denied a trial *de novo* is meritless.

### IV. Alleged hearsay statement regarding the child's preference

Father challenges the circuit court's consideration of statements of the guardian purporting to evince the preferences of the child. He argues that the statements constituted inadmissible hearsay and that the circuit court erred in allowing the guardian to convey them. Even if we assume that the guardian's recitation of the child's preferences constituted hearsay and that the circuit court erred in allowing the guardian to relay the statements, any such error was clearly harmless.

"Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" Spruill v. Garcia, 298 Va. 120, 127 (2019) (emphasis in original) (quoting White v. Commonwealth, 293 Va. 411, 420 (2017)). Under Code § 8.01-678, non-constitutional error is harmless "[w]hen it plainly

appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  In applying the doctrine of harmless error, we have recognized that,

> If, when all is said and done, [it is clear] that the error did not influence the [factfinder], or had but slight effect, . . . the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . .  If so, or if one is left in grave doubt, the [judgment] cannot stand.

Schwartz v. Schwartz, 46 Va. App. 145, 159 (2005) (alterations and ellipses in original) (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)).

Here, we find that the guardian's statements relaying the child's preferences "had but slight effect" on the circuit court's ultimate ruling.  Sources other than the guardian's statements revealed the child's preferences.  During their testimony, both mother and Vadas gave testimony supporting a conclusion that the child wished to see father less frequently.  Father did not object to this testimony, and therefore, it was proper for the circuit court to consider it.  Furthermore, the circuit court was able to view the video of the child, which also provided support for such a conclusion.

Moreover, the fact that the guardian's restatement of the child's preferences had little to no effect is evinced by the fact that the circuit court did not incorporate the purported preference into its final disposition.  The guardian reported that the child had stated that she wanted to see her father only once a month.  Despite this purported preference, the circuit court awarded father visitation twice a month, demonstrating conclusively that the circuit court's decision was not driven by the statement from the guardian.  For these reasons, we conclude that, if it were error, any error of the circuit court in allowing the guardian to reveal the child's preferences was harmless.

V.  Denial of constitutional rights

Father contends that, in entering its custody and visitation order, the circuit court violated his constitutional rights.  He contends the circuit court violated rights guaranteed him by the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

A.  Eighth Amendment claim

On appeal, as he did in the circuit court, father contends that requiring him to pay the costs associated with his supervised visitation with his child violates the Eighth Amendment.  We disagree.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The circuit court's order assessed against father (as opposed to mother) the costs of having a supervisor present for his supervised visitation.  Father contends that assessing said costs against him amounts to an "excessive fine" in violation of the Eighth Amendment's prohibition on same.

Although normally associated with criminal proceedings, the excessive fines clause of the Eighth Amendment does apply to certain civil proceedings, such as *in rem* forfeitures, in which the government imposes a civil penalty for the purposes of punishment.  See Austin v. United States, 509 U.S. 602, 609-10 (1993).  It does not follow, however, that imposing the costs of supervised visitation on father constitutes a "fine" for the purposes of the Eighth Amendment.

"[A]t the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'"  United States v. Bajakajian, 524 U.S. 321, 327 (1998) (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989)).  Conditioning father's visitation on it being supervised and imposing the associated costs on him does not require father to pay any amount to a sovereign.  Moreover, the costs involved were not imposed for punishment of an offense committed by father; rather, the sole

- 17 -

purpose of the supervised visitation (and any associated costs) was and remains to safeguard the best interests of the child.[2]  Because the costs associated with supervised visitation are not paid to the sovereign and were not imposed as punishment for any offenses, they do not constitute a "fine" for the purposes of the Eighth Amendment.  Accordingly, father's Eighth Amendment claim is without merit.

### B.  Other constitutional claims

In addition to the Eighth Amendment claim he raised in the circuit court, father argues on appeal that the actions of the circuit court violated his First, Fifth, and Fourteenth Amendment rights.  However, other than generic references to Quillon v. Walcott, 434 U.S. 246 (1978), and Troxel v. Granville, 530 U.S. 57 (2000), for the proposition that there is a constitutionally protected interest in the parent-child relationship, father offers no authority to even suggest that any specific action of the circuit court abridged a specific constitutional interest of his.  This lack of authority is fatal to his claims.

Rule 5A:20 requires that an appellant's opening brief contain authority in support of the appellate claims raised.  We repeatedly have held that claims "unsupported by argument, authority, or citations to the record do not merit appellate consideration."  Kane v. Szymczak, 41 Va. App. 365, 370 (2003) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56 (1992)).  Accordingly, father's failure to include any authority to support his First, Fifth, and Fourteenth Amendment claims constitutes a waiver of those arguments.  Rule 5A:20.

Moreover, even if the claims were not waived by the failure to include supporting authority in the opening brief, father did not raise these specific constitutional arguments in the circuit court.

---

[2] The fact that father's recent conviction of a sexual offense related to a minor may have played a part in the circuit court's decision to require supervised visitation does not alter the purpose of the requirement.  Supervised visitation with its attendant costs was ordered to protect the child, not punish the father.

Rule 5A:18, which often is referred to as "the contemporaneous objection rule," provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling[.]" To comply with the rule, it is not enough for a litigant to make a similar argument in the circuit court; he must have made the specific argument he seeks to raise on appeal. Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*). Because father failed to raise these specific constitutional claims in the circuit court, we will not address them on appeal.[3]

## VI. Weighing of the evidence and the statutory factors

In his remaining arguments, father challenges the circuit court's weighing of the evidence and application of that evidence to the factors set forth in Code § 20-124.3. In essence, he argues that the circuit court could not have reached the conclusions it reached regarding legal custody and visitation if it had weighed the evidence and considered the statutory factors appropriately.

Charged with giving "primary consideration to the best interests of the child[,]" Cloutier v. Queen, 35 Va. App. 413, 425 (2001) (quoting Code § 20-124.2(B)), circuit courts are granted "broad discretion" in making custody and visitation determinations, Brown v. Brown, 30 Va. App. 532, 538 (1999). This grant of discretion stems from "the venerable belief that the

---

[3] Father largely concedes that he did not raise these constitutional claims in the circuit court, stating in his reply brief that "[m]other claims father never noted his [c]onstitutional objections" in the circuit court and that this contention is "partly true[.]" Recognizing his failure to comply with the requirements of Rule 5A:18, father asks that we apply the rule's "ends-of-justice" exception to address the merits of his arguments. The exception is a "narrow" one, and, for it to apply, the alleged error must be "clear, substantial and material," Andrews v. Creacey, 56 Va. App. 606, 636 (2010) (quoting Brown v Commonwealth, 8 Va. App. 126, 132 (1989)), and "[t]he record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred,'" id. (quoting Redman v. Commonwealth, 25 Va. App. 215, 221 (1997)). We find no basis upon which to apply the exception here; moreover, there is no similar exception to the requirements of Rule 5A:20. Ferguson v. Commonwealth, 71 Va. App. 546, 557 (2020) (recognizing that "unlike Rule 5A:18, . . . Rule 5A:20 contains [no] 'ends of justice' exception that might permit us to consider the matter"). Accordingly, we do not address the merits of father's First, Fifth, and Fourteenth Amendment claims.

judge closest to the contest is the judge best able to discern where the equities lie." Hamad v. Hamad, 61 Va. App. 593, 607 (2013). As a result, a circuit court's determinations regarding custody and visitation are "reversible only upon a showing that the court abused its discretion." Bedell, 70 Va. App. at 504 (quoting Stadter v. Siperko, 52 Va. App. 81, 88 (2008)).

In determining custody and visitation, a circuit court is required to consider the factors delineated in Code § 20-124.3, and the court's "determinations must be based upon the child's best interest as viewed under the circumstances existing at the time of the decision." Cloutier, 35 Va. App. at 425. "Although a circuit court must consider the statutory factors . . . , it determines how to weigh those factors and 'is not "required to quantify or elaborate exactly what weight or consideration it has given to each[.]"'" Wynnycky, 71 Va. App. at 201 (quoting Brown, 30 Va. App. at 538). Moreover, "[o]n appeal, we do not reweigh the factors to see if we would have reached a different conclusion[.]" Id. Accordingly, "unless the court fails to consider the required statutory factors or applies an incorrect legal standard, a trial court's decision as to whether a change in custody [or visitation] would be in the best interests of the child is reversible on appeal only if 'plainly wrong or without evidence to support it.'" Surles v. Mayer, 48 Va. App. 146, 172 (2006) (quoting Yopp, 43 Va. App. at 439).

A review of the record reveals that the circuit court more than met its obligation to consider both the evidence and the statutory factors. Both orally and in writing, the circuit court detailed its consideration of the statutory factors, how it weighed those factors, and the pieces of evidence upon which it relied in drawing its ultimate conclusions based on those factors.

That father or another factfinder would have weighed the factors or pieces of evidence differently is of no moment. On appeal, "we may not retry the facts or substitute our view of the facts for those of the trial court." Bedell, 70 Va. App. at 504 (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 336 (1992)). "Because evidence supported the circuit

court's factual findings that underlie the circuit court's weighing of the factors and there is nothing inherently unreasonable in its weighing of those factors, 'its ruling must be affirmed on appeal.'" <u>Wynnycky</u>, 71 Va. App. at 201 (quoting <u>Brown</u>, 30 Va. App. at 538).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.[4]

<u>Affirmed.</u>

---

[4] Both parties request an award of attorney's fees incurred on appeal. After taking "the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment[,]" <u>Johnson v. Johnson</u>, 56 Va. App. 511, 520 (2010) (quoting <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695 (1996)), we deny both requests.