COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Malveaux and Fulton
Argued at Fredericksburg, Virginia

ALAN EMIN HALAC

MEMORANDUM OPINION* BY
v.      Record No. 1491-22-4      JUDGE MARY BENNETT MALVEAUX
SEPTEMBER 5, 2023

A.N.H., BY NEXT FRIEND ANGELA LUMLEY

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Melanie Hubbard (Malinowski Hubbard, PLLC, on briefs), for
appellant.

Amanda M. Stone Swart (Elizabeth M. Ross, Guardian ad litem for
the minor child; Livesay & Myers, P.C.; Beckman Schmalzle
Georgelas & Ross, PLC, on brief), for appellee.


Alan Emin Halac (father) appeals a protective order the circuit court entered in favor of a

minor child (A.N.H.), an adult child (M.H.), and Angela Lumley (mother). On appeal, father

alleges that the circuit court erred in granting the protective order because the evidence was

insufficient to prove that the protective order was necessary to protect mother and the children's

health and safety, or that mother and the children had a reasonable apprehension of death, sexual

assault, or bodily injury. Father also argues that the circuit court erred in granting A.N.H.

possession of a dog and in prohibiting him from contacting A.N.H.'s therapist. For the following

reasons, we affirm the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Mother and father divorced in 2014. Following mother and father's divorce, A.N.H., who was 15 years old at the time of the underlying circuit court trial, lived equally with each parent. Mother and father's adult child, M.H., had also lived with both parents, but moved out of father's house after turning 18 years old. A.N.H.'s dog, which father had purchased in September 2021, also lived with father. A.N.H. and father had a difficult relationship, resulting in a number of complaints to Child Protective Services (CPS). Some of these complaints resulted in family assessments, where CPS made various recommendations, including that father refrain from physical discipline.

On April 22, 2022, father drove A.N.H. to his residence after school. When they arrived home, father followed A.N.H. upstairs. Father was "angry" and "pushed [A.N.H.] from behind," causing her to hit the bedroom door and fall to the ground. He then followed A.N.H. downstairs. Father was "mad" and "came after" A.N.H., grabbing and restraining her near his office. Father picked her up and "threw [her] to the ground." While she sat on the ground, father sat down at his desk and asked A.N.H. why she was on the ground "like nothing just happened." A.N.H. was "confused and scared" and told him that she was on the ground because he pushed her and threw her to the ground. When she tried to leave, father became "angry" and tried to grab her again. Father "went to touch [A.N.H.'s] butt," but A.N.H. was able to push him off. Father, however, "grabbed" her arms and again "threw [A.N.H.] back to the ground." Although A.N.H. did not have "marks" as a result of the fall, she was "hurt" and "really shaken up."

During the incident, father began recording A.N.H. "in case there was a new claim against [him] for any reason," and this recording was admitted into evidence. On the recording, A.N.H. can be heard yelling at father and telling him to stop "grabbing" her. The circuit court heard the recording concerning the incident, including father's recorded statements that he "grabbed" A.N.H.

and that she "need[ed] to get [her] butt spanked." Father also told A.N.H. on the recording that he would not take care of the dog anymore if A.N.H. was "going to be like this" and that he would "get rid of that damn Shepard." According to father's testimony at trial, A.N.H. "was . . . trying to create a reaction." Father also admitted at trial that he "spanked" A.N.H. but denied grabbing her and instead testified that he "corralled her to the stairs."

After father threw her to the ground the second time, A.N.H. went upstairs, retrieved her school laptop, and locked herself in the bathroom. A.N.H. emailed mother and her school counselor and told them that father was "attacking" and "touching" her and threatening to "kill" the dog. A.N.H. asked both mother and the school counselor to help her because she was "scared." Father then began "banging" on the door and "threatening to break it down." A.N.H. left the bathroom and gave father the laptop, at which point father again "started threatening" her dog. A.N.H. remained at father's house through the weekend, but "mostly stayed in [the] bathroom or near the bathroom."

A.N.H.'s emails triggered an alert through the Loudoun County Public School's email system, after which Deputy Alyssa Kallmayer of the Loudoun County Sheriff's Office went to father's residence for a welfare check on the day of the incident. No one answered the door, despite Deputy Kallmayer knocking three times and ringing the doorbell. Deputy Kallmayer later spoke to father twice on the phone that evening during which father "was upset" and "angry." When Deputy Kallmayer asked to speak with A.N.H., father refused. Deputy Kallmayer also contacted mother, who "described past abuse incidents" between father and A.N.H. and "expressed her concern" about father's behavior. Deputy Kallmayer also contacted the principal of A.N.H.'s school, who stated that father had "been extremely uncooperative with the school in the past and . . . often display[ed] anger towards the school when anyone trie[d] to contact him." Deputy Kallmayer concluded that the police needed to take no further action at that time, but noted that CPS and the school counselor would follow-up and mother would call the police if any further incidents occurred.

Following the incident, father emailed A.N.H. and stated that A.N.H.'s dog would have "no one to sustain the care and attention she needs" and that he would "not likely be able to keep [the dog] much longer" if A.N.H. failed to return to his residence. A.N.H. and mother were able to retrieve the dog from father's home on May 9, 2022. At that time, the dog did not appear to have been "properly taken care of"; mother and A.N.H. could see her ribs and hip bones, and her sides "were concave."

On May 9, 2022, A.N.H., by mother as her next friend, petitioned for a protective order under Code § 16.1-279.1 against father, citing the April 22, 2022 incident. In the protective order affidavit, A.N.H. stated that the "abuse" caused "red hand prints" from father grabbing her and her "shoulder hurt from hitting the door." The JDR court granted a preliminary protective order. Following a hearing, the JDR court granted A.N.H.'s petition and issued a two-year protective order against father.

Father appealed to the circuit court, and the parties convened for hearing on August 31, 2022. At the conclusion of the trial, the circuit court ruled that it was not dissolving the protective order. The circuit court was concerned for A.N.H.'s mental health and found that evidence of "family abuse [was] consistent with the recording." The circuit court also cited the CPS complaints and A.N.H.'s emails to mother and the school counselor asking for help. The circuit court concluded that father was "not doing anything to protect [A.N.H.] emotionally" and that when A.N.H. was in father's care, he created "the instability, the fear, the reasonable apprehension of death, sexual assault, or bodily injury."

The circuit court entered a two-year protective order covering A.N.H., M.H., and mother. The order stated that father "shall not commit acts of family abuse or criminal offenses that result in injury to person or property." The circuit court ordered that father shall not contact A.N.H. except "non-assaultive/harassing contact at [A.N.H.'s] choice." The circuit court also ordered that father

could have no contact of any kind with mother and M.H. except "non-assaultive/harassing contact" at M.H.'s request. The circuit court granted A.N.H. possession of the dog, permitted A.N.H. "to retrieve personal property from [father's] residence," and forbade "recording by any party without notice." The protective order also allowed father "access to mental health records through his attorney," but prohibited father from contacting A.N.H.'s therapist. The protective order also stated that "all other terms from [the JDR court's order] remain." Father appeals.

ANALYSIS

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" *Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014)). As the prevailing party below, we review the evidence in the light most favorable to A.N.H.

A. Protective Order

Father argues that the circuit court erred in issuing the protective order on A.N.H.'s behalf.[1] In pertinent part, Code § 16.1-279.1(A) states, "[i]n cases of family abuse, . . . the court may issue a protective order to protect the health and safety of the petitioner and family or household members of the petitioner." "'Family abuse' means any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury and

---

[1] A.N.H. argues that father did not preserve any of his assignments of error as required by Rule 5A:18 because he did not note any objections to the final order and did not renew his motion to strike. Father, however, challenged the sufficiency of the evidence supporting the protective order in closing argument. "In a bench trial, a defendant can preserve the issue by raising the argument in a renewed motion to strike or during closing arguments." *Rompalo v. Commonwealth*, 72 Va. App. 147, 155 n.2 (2020), *aff'd*, 299 Va. 683 (2021); *see also Lee v. Lee*, 12 Va. App. 512, 515 (1991) (en banc). Therefore, we find that father preserved his third and fifth assignments of error for appeal. As discussed herein, the remaining assignments of error are barred by Rule 5A:18.

that is committed by a person against such person's family or household member." Code § 16.1-228.

Father contends there was no evidence of any acts causing "bodily injury" or that A.N.H. had "a reasonable apprehension of death, sexual assault, or bodily injury." Father argues that A.N.H. testified she "did not have any marks that she could remember from being allegedly picked up and thrown down by" father. Father also contends that A.N.H. was "not fearful" of father, alleging that the recording showed A.N.H. challenging father. Father notes that A.N.H. remained at his house for a few days following the incident and returned to his house the week after the incident. Father further argues that CPS never entered a safety plan based on the past complaints and that he was not arrested for domestic assault following the April 22, 2022 incident. Father acknowledged "having grabbed and/or corralled [A.N.H.] to go back upstairs in an attempt to end her confrontation on April 22, 2022," but argued that this was "not behavior warranting a protective order against [father], . . . when considered in light of [A.N.H.'s] disrespectful and seemingly unhinged behavior as captured in the audio recording."

Contrary to father's arguments, the evidence supports the circuit court's ruling in support of the protective order. A.N.H. testified about her relationship with father as well as the April 22, 2022 incident. She stated that during the incident father "got mad, and came after [her], grabbing [her], trying to restrain [her] and pick [her] up . . . and threw [her] to the ground." When she tried to leave the room, father "grabbed" her and "threw [her] back to the ground" again before she was able to go upstairs and lock herself in the bathroom. After hearing all the evidence, the circuit court concluded that "family abuse is consistent with the recording" and that A.N.H. was "standing up to a bully." Furthermore, A.N.H., as in the emails to mother and the school counselor, testified several times that she was "scared" and "terrified" during the April 22, 2022 incident, and the circuit court explicitly found that A.N.H. was "afraid." "It is well established that the trier of fact ascertains a

witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Khalid-Schieber v. Hussain*, 70 Va. App. 219, 234 (2019) (citing *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). The circuit court accepted A.N.H.'s testimony regarding the event and A.N.H.'s fear of father, which was corroborated by the recording. We therefore find that the evidence supports the circuit court's ruling in support of the protective order.[2]

---

[2] Father additionally argues that the circuit court erred by prohibiting him from contacting A.N.H.'s therapist, issuing the protective order for two years, and extending the protective order to M.H. and mother. However, we do not reach the merits of these arguments because Rule 5A:18 bars our consideration of them. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). Here, father failed to raise any of these arguments in the circuit court. Additionally, father did not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply them sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Thus, father's first, second, fourth, and sixth assignments of error are waived.

In his seventh and final assignment of error, father argues that the circuit court erred as a matter of law by ordering that all other terms from the JDR court's protective order remain in the circuit court's protective order. Father acknowledges that he did not raise this argument in the circuit court, but asks this Court to apply the good cause and ends of justice exceptions to this argument.

"The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court." *Canales v. Torres Orellana*, 67 Va. App. 759, 772 n.6 (2017) (en banc) (quoting *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011)). Here, father had the opportunity to object but simply failed to do so; therefore, the good cause exception does not apply.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). Father argues that he "cannot be bound by the terms of an order entered by the . . . JDR [c]ourt that is a legal nullity under Virginia law." The protective order entered by the circuit court on August 31, 2022, contains all the terms of the JDR court order, plus additional terms added by the circuit court. The statement "all other terms" of the JDR court's protective order "remain" has no practical effect because the JDR court's order did not include terms that were not also included in the circuit court order. Therefore, we reject father's argument, as he has not met his burden because no "grave injustice" has occurred. *Bass*, 292 Va. at 27.

B. Possession of the Dog

Father argues that the circuit court erred by granting A.N.H. possession of the dog through the protective order "as the evidence was insufficient to support removal of the dog from [father's] custody or to prove doing so was necessary to protect the health and safety of" A.N.H. It is within the circuit court's discretion to impose a protective order. *See* Code § 16.1-278.14. "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Stark v. Dinarany*, 73 Va. App. 733, 746 (2021) (quoting *Galiotos v. Galiotos*, 300 Va. 1, 11 (2021)).

Father alleged in the circuit court that he did not want to "giv[e] up the dog." However, A.N.H. testified that father threatened the dog and father himself testified that he told A.N.H. that he would be unable to care for it if she did not return to his home. Moreover, at the time A.N.H. and mother retrieved the dog, the dog did not appear to have received proper care, as the dog appeared to be underweight. As such, the circuit court did not abuse its discretion in awarding possession of the dog to A.N.H. through the protective order.

C. Appellate Attorney Fees and Costs

Both parties ask for an award of appellate attorney fees and costs incurred on appeal. "This Court has discretion to grant or deny attorney's fees incurred on appeal." *Stark*, 73 Va. App. at 757. "In making such a determination, the Court considers all the equities of the case." *Id.*; *see* Rule 5A:30(b)(3). Having reviewed and considered the record in this case, we deny both parties' requests for attorney fees.

CONCLUSION

For the foregoing reasons, the circuit court's order is affirmed.

*Affirmed*.